**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

United King Film Distribution Ltd, D.B.S. Satellite          :
Services (1998) Ltd, HOT Communication Systems Ltd,
Charlton Ltd, Reshet Media Ltd, and Keshet Broadcasting       :
Ltd,                                                                    Case No. 1:21-cv-11024
                                                             :
                    Plaintiffs,
                                                             :
                                                                **COMPLAINT**
            -- against --                                    :

Does 1-10, d/b/a **Israel.tv**,                              :

                    Defendants.                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

   Plaintiffs United King Film Distribution Ltd, D.B.S. Satellite Services (1998) Ltd, HOT

Communication Systems Ltd, Charlton Ltd, Reshet Media Ltd, and Keshet Broadcasting Ltd

(together "**Plaintiffs**") by and through their attorneys, Kaufman & Kahn, LLP, as and for their

Complaint against defendants Does 1-10 doing business as Israel.tv, state the following:

<u>**Nature of the Action**</u>

 1. Plaintiffs commenced this action for direct, vicarious and contributory copyright

infringement and for DMCA violations because the Doe Defendants' Website (the "**Website**")

located at the domain http://Israel.tv  (the "**Domain**") is re-broadcasting and streaming Plaintiffs'

original content, broadcasting channels and TV services which are only authorized for viewing in

the territory of the State of Israel (the "**Infringing Broadcasting**"). The Infringing Broadcasting

includes original content produced and owned by Plaintiffs, mostly in Hebrew, and all or virtually

all of the content of channels which include content from Israel and also from major studios in the

United States and elsewhere, licensed to Plaintiffs for broadcasting exclusively in Israel.

2.      An Israeli court issued orders that determined Defendants were infringing upon Plaintiffs' copyrights and enjoined ISPs in Israel from hosting the Website.

3.      Despite such court orders, Defendants demonstrated that their infringement was willful by continuing to provide the Infringing Broadcasting in the United States.

**The Parties**

4.      Plaintiff United King Film Distribution (1990) Ltd ("**United King**") is a limited company organized under the laws of Israel with its principal place of business located in Israel. United King produces and distributes movies and films.

5.      Plaintiff D.B.S. Satellite Services (1998) Ltd, also known as YES ("**YES**") is a limited company organized under the laws of Israel with its principal place of business located in Israel.  YES is the only company licensed to provide satellite television service in the State of Israel.

6.      Plaintiff HOT Communication Systems Ltd, also known as HOT ("**HOT**") is a limited company organized under the laws of Israel with its principal place of business located in Israel. HOT is the only company licensed to provide cable television service in the State of Israel.

7.      Plaintiff Charlton Ltd ("**Charlton**") is a limited company organized under the laws of Israel with its principal place of business located in Israel. Charlton is among the largest sports television stations in Israel.

8.      Plaintiff Reshet Media Ltd ("**Reshet**"), also known as "Channel 13", is a limited company organized under the laws of Israel with its principal place of business located in Israel. Reshet produces, broadcasts, and licenses for distribution (in Israel, the U.S., and elsewhere) its original television series content.

9.      Plaintiff Keshet Broadcasting Ltd ("**Keshet**") also known as "Channel 12" is a limited company organized under the laws of Israel with its principal place of business located in Israel. Keshet produces, broadcasts, and licenses for distribution (in Israel, the U.S., and elsewhere) its original television series content.

10.     Defendants Does 1-10 are individuals or entities that own and/or control the Domain and/or operate the Website. Plaintiffs are unaware of the true names of Does 1-10. Defendants are concealing their identities through the use of domain registration proxy services and other means. Plaintiffs believe discovery might identify Does 1-10 and enable Plaintiffs to amend the complaint to list Defendants by name.

## Jurisdiction and Venue

11.     Plaintiffs assert claims under the Copyright Act, 17 U.S.C. § 101 *et seq*.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

12.     Personal jurisdiction is proper against Defendants because without authorization they use the Website to distribute and provide access to paying subscribers of the Website ("**Website Users**") who reside in the State of New York.

13.     New York State is home to the largest Hebrew-speaking community in the United States, and New York City (with Los Angeles) has one of the two largest Israeli expatriate communities in the United States.

14.     Thus, Defendants intentionally direct their business activities towards New York.

15.     Additionally, Plaintiffs' representative opened an account on the Website and accessed the infringing content from the State of New York in this district.

16.     In the alternative, personal jurisdiction is proper against Defendants under Rule 4(k)(2) of the Federal Rules of Civil Procedure. Defendants provide to Website Users located in

the United States access to content (protected by the U.S. Copyright Act of 1976, as amended) and television channels owned by Plaintiffs, and circumvented technological measures that effectively control access to Plaintiffs' works. This Court's exercise of jurisdiction over Defendants is consistent with the Constitution and laws of the United States, Plaintiffs' claims arise under federal law, and upon information and belief, some if not all Defendants reside outside the United States.

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this district. Venue is also proper under § 28 U.S.C. §1391(c)(3) because, upon information and belief, some or all of Defendants are nonresidents that may be sued in any judicial district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

### Plaintiffs' Copyrights

18.     Plaintiffs are the among the largest movie, television, sports and news content producers and providers in Israel, providing copyrighted programming to hundreds of thousands of subscribers throughout Israel, by cable or satellite broadcasting and online through their own platforms.

19.     Plaintiffs stream on the internet and broadcast for television in Israel their original content, and content they license from the largest film and television producers in the United States (including Disney, Viacom, HBO and ABC, to name only a few) for translation into, or sub-titling in, Hebrew and other languages that are popular in Israel.

20.     Plaintiffs provide authorized content only on the following channels (collectively, the "**Protected Channels**"):

a. United King licenses its content for delivery exclusively in the State of Israel on YES and HOT's platforms, and on the website for United States viewers located at www.screen.il.

b. HOT distributes content on its own channel in Israel, and also licenses some of its series for streaming in the United States, including the shows *Nehama, Autonomies* and *The Word Maker* (on Topic.com), *The Attaché* (on Acorn.TV), *Judah* (on Hulu) and *Losing Alice* (on Apple TV).

c. YES distributes content on its own satellite platform in Israel and also licenses some of its series (such as *Shtisel* and *Fauda*) to streaming services such as Netflix in the United States;

d. Charlton's content includes live broadcasting of major sport leagues from around the world and Israel, and for broadcasting exclusively in the State of Israel. Charlton distributes content on YES and HOT's sport channel platforms in Israel.

e. Reshet broadcasts its content on its own Channel 13 television station. Reshet also licenses its content for delivery exclusively in the State of Israel on YES and HOT's platforms, and on the website for United States viewers located at www.screen.il.

f. Keshet distributes content for broadcasting exclusively in the State of Israel on its own Channel 12. Keshet also licenses its content for delivery exclusively in the State of Israel on YES and HOT's platforms, and on the website for United States viewers located at www.screen.il. Keshet also provides content through its United States affiliate, Keshet International LLC, which produces and distributes its original content (such as *Hatufim*, distributed in the US as *Homeland*) through www.keshetinternational.com.

21.   Plaintiffs license or acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

22.   Each Plaintiff has copyright ownership for and in works, including by way of example only, the works set forth in the schedule annexed and made **Exhibit A** hereto, some of

which are not registered in the United States but are still protected by United States copyright pursuant to applicable treaty rights.

23.     Plaintiffs Keshet, United King and Yes, also have U.S copyright registrations for and in some of their works, as set forth in a schedule annexed and made **Exhibit B** hereto.

24.     Charlton also has copyrights in its content by broadcasting and streaming live sports events and news coverage.

**Defendants' Wrongful Conduct**

25.     Defendants infringe upon Plaintiffs' copyrights by re-broadcasting content from Plaintiffs' Protected Channels, including some or all of the works set forth on Exhibits A and B.

26.     Screenshots from the Website demonstrate that the operator and/or owner of the infringing Website is streaming all or virtually all of the content from each of Plaintiffs' respective channels.

27.     Defendants even copy and include in Defendants' streaming  Plaintiffs' logos and production credits displayed on Plaintiffs' movies, series, sports events and news.

28.     Plaintiffs have the exclusive right to broadcast, distribute, publicly perform, make available to the public and license to others the Protected Channels and works that air on the Protected Channels in Israel and elsewhere, including the United States.

20.     Plaintiffs have never and do not currently authorize Defendants to transmit, distribute, or publicly perform the Protected Channels or works that air on the Infringing Broadcasting in the United States, and Plaintiffs have received no compensation from Defendants to do so.

29.     Defendants own, control and operate the Website.

30.     The Website allows Website Users to watch unauthorized streams of the Protected Channels, including some or all of the works identified above at Exhibits A and/or B.

31.     Defendants control the organization and presentation of the Protected Channels. Defendants organize the Protected Channels by name using the same still photos and promotional art, and even the very trade names, trademarks, and/or service marks owned and used by Plaintiffs.

32.     Defendants provide Website Users with access to streams of the Protected Channels on the Website.

33.     When Website Users click on links to the names or logos for the Protected Channels displayed on the Website, they instantaneously receive unauthorized streams of the Protected Channels.

34.     Upon information and belief, because New York City has a concentration of Hebrew speakers and Israeli expatriates, Defendants intentionally reached out to New York customers to use the infringing Website, and encouraged such consumers to subscribe to the Website.

35.     Upon information and belief, Defendants derive substantial revenue from interstate or international commerce.

36.     Upon information and belief, customers who have been subscribing to Defendants' infringing Website for Israeli and Hebrew-language content are reluctant to subscribe to legitimate website, www.screen.il, which streams the content of three of the Plaintiffs (United King, Reshet and Keshet).

37.     Defendants monetize the Website through subscriptions to their users.

38.     To the best of Plaintiffs' knowledge, the funds collected by the Defendants are deposited into accounts that are hidden in secret accounts intended to prevent tracing.

39.     To the best of Plaintiffs' knowledge, no taxes are paid on the unlawful services, either in the United States or in Israel.

40.     Defendants have actual knowledge that the transmission in the United States of the Protected Channels and works that air on the Protected Channels infringe or have infringed Plaintiffs' copyrights.

41.     Plaintiffs sued Defendants in the State of Israel. The Israeli court issued orders declaring that Defendants' conduct constitutes copyright infringement.

42.     The Israeli court orders also enjoined the ISPs in that country from allowing access to the infringing Website through their internet services.

43.     Despite the Israeli court orders, Defendants continue in the United States to infringe on Plaintiffs' copyrights.

44.     Plaintiffs have also filed criminal complaints against the Defendants in Israel and the United Kingdom and delivered information to the United States Department of Justice for investigation.

45.     Additionally, Plaintiffs sent notices to the Website's service providers located in the United States requesting the removal of the Infringing Broadcasting (and also requesting information to identify and locate Defendants). Upon information and belief, at least some of these notices were forwarded to Defendants.

## **FIRST CLAIM FOR RELIEF**
### **(Copyright Infringement Under 17 U.S.C. § 501)**

46.     Plaintiffs repeats and realleges each and every allegations set forth in Paragraphs 1 through 45 hereof.

47.     Plaintiffs are copyright owners because Plaintiffs created, produced and hold in Israel the exclusive rights to distribute, broadcast, made available to the public and publicly

perform, by all means including the Internet, the programs that make up the Protected Channels.

48.     The copyrights in some of Plaintiffs' works are registered in the United States.

49.     The broadcasting and the programs that make up the Protected Channels are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter. Plaintiffs's copyrights in programs that aired on the Protected Channels arise or arose under laws of Israel, a party to copyright treaties with the United States (including the Berne Convention), where the programs were authored and first published. Under 17 U.S.C. §§ 101 and 411(a), the programs that make up the Protected Channels are non-United States works and, therefore, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.

50.     Plaintiffs' exclusive rights to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels, including some or all of the works identified in Exhibits A and B hereto, are or were directly infringed by the unauthorized transmission of these programs to viewers in the United States.

51.     Defendants cause this infringement of Plaintiffs' copyrights, broadcasting rights and exclusive distribution and public performance rights by, among other things, providing Website Users access to the Protected Channels and the programs that make up the Protected Channels.

52.     Defendants also contribute or contributed to and induce or induced the infringement of Plaintiffs' exclusive distribution and public performance rights by, among other things, inviting Website Users to view the infringed content in the United States.

53.     Defendants are liable to Plaintiffs for vicarious and contributory copyright infringement by providing to Website Users access to the unauthorized programs using

Defendants' Website.

54.     Defendants select the channels that are made accessible to Website Users through the Website. Defendants without authorization of any copyright owners acquire, upload, embed, maintain, and control the links on the Website that are and were used to connect Website Users to the Protected Channels delivered to them as Infringing Broadcasting.

55.     Defendants intend that the Website be used to provide access to the Protected Channels and the programs that make up the Protected Channels, and they promote, encourage, and facilitate using the Website in this manner.

56.     Defendants have actual knowledge that the transmission of the Protected Channels and the programs that make up the Protected Channels to Website Users infringe Plaintiffs' copyrights, broadcasting rights, exclusive distribution and public performance rights.

57.     Defendants conduct their unlawful business solely by email and over the Internet, making concerted efforts to conceal their true names and physical locations. Defendants have attempted to conceal their identity and to frustrate attempts to stop their unlawful activity, including by not posting any real names, physical addresses, or telephone numbers on the Website, and cloaking as "private" their contact information with domain name registrars.

58.     Defendants utilize the services of a number of companies in the United States in connection with their infringing activities. In particular, Defendants employ (a) domain name registration for the Website and other domain names that link to the Website through Jewella, Name.com and/or GoDaddy.com, LLC, (b) payment processing through credit card processors via undisclosed locations outside of the United States; and (c) downloadable software applications.

59.     Defendants can and could take simple measures to prevent further infringement of Plaintiffs' exclusive rights to distribute and publicly perform the programs that make up the

Protected Channels, such as removing or disabling connections to the Protected Channels from the Website or blocking Website Users in the United States from accessing the Website through the ISPs.

60.     Defendants' actions are and were willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

61.     Unless enjoined by the Court, Defendants will continue to engage in acts causing substantial and irreparable injury to Plaintiffs, and other copyright owners, that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## (Violation of DMCA's "Anti-Circumvention" Provision)

62.     Plaintiffs repeats and realleges each and every allegations set forth in Paragraphs 1 through 61 hereof.

63.     Upon information and belief, Defendants hack into or otherwise circumvent and intercept plaintiffs' Protected Websites and then download, copy, or utilize the signals before distributing them to paying customers using interactive websites, including the Website.

64.     The "anti-circumvention" provision of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1)(A), provides that "[n]o person shall circumvent a technological measure that effectively controls access to a [protected] work." To "circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove deactivate, or impair a technological measure, without the authority of the copyright owner." Id. § 1201(a)(3)(A).

65.     Plaintiffs transmit their Programming in an encrypted form, either as cable television transmission or via satellite transmission, and defendants' various services and hardware permit end-user consumers to bypass the Plaintiffs' encryption to view the content on the Protected

Websites.

66.     As a result of the foregoing, Defendants violate the anti-circumvention provision of the DMCA.

67.     Defendants' actions are and were willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

68.     Unless enjoined by the Court, Defendants will continue to engage in acts causing substantial and irreparable injury to Plaintiffs, and other copyright owners, that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**(Deceptive Acts And Practices Pursuant to New York Gen. Bus. Law § 349)**

69.     Plaintiffs repeats and realleges each and every allegations set forth in Paragraphs 1 through 68 hereof.

70.     New York Gen. Bus. Law Section 349 ("§ 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.

71.     Upon information and belief defendants' acts were directed at consumers in New York who speak Hebrew and/or are Israeli expatriates residing in New York.

72.     Defendants are liable under § 349 for deceiving consumers and paying customers who reside in New York into believing Defendants have the legal right or authority to broadcast or rebroadcast plaintiffs' content, including through the use of the infringing Website.

73.     Such acts were misleading in a material way, as a result of which Plaintiffs were injured by not being able to sell their competing, legitimate services to such consumers, and the public interest was harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:

A.      For a grant of preliminary and permanent injunctive relief under 17 U.S.C. § 502 restraining and enjoining Defendants, and any of their agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order, including service providers, from any of the following:

      1.      Transmitting, streaming, distributing, broadcasting, publicly performing, linking to, hosting, promoting, advertising, or displaying in the United States, through the Website, or any other domain, server, website, device, application, service, or process, (a) any of the content produced, owned and/or distributed by Plaintiffs on their respective channels or websites or (b) any of the content that comprises any Plaintiff's channel or website or which any Plaintiff licenses to others for distribution;

      2.      Inducing or contributing to any other person's or entity's conduct that falls within Paragraph 1 above; and

      3.      Selling, leasing, licensing, assigning, conveying, distributing, loaning, encumbering, pledging, or otherwise transferring, whether or not for consideration or compensation, any part of their infringing operations or assets;

B.      For one or more registered works, statutory damages as awarded by the Court up to $150,000 per registered work infringed under 17 U.S.C. § 504(c), or Defendants' profits attributable to the infringement of those registered works under 17 U.S.C. § 504(b);

C.      For unregistered works, an award of Defendants' profits attributable to the infringement of each unregistered work under 17 U.S.C. § 504(b);

D.      For Plaintiffs' attorneys' fees and costs under 17 U.S.C. § 505;

E.      For impoundment and disposition of all infringing articles under 17 U.S.C. § 503;

F.      For an order permanently transferring to Plaintiffs each domain that Defendants used or will use in connection with the infringement;

G.      For violations of 17 USCS § 1201, at Plaintiffs' election, either (1) the actual damages suffered by Plaintiffs as a result of the violations, and any profits of Defendants that are attributable to the violations, or (2) statutory damages as awarded by the Court in the sum of $2,500 per act of circumvention, offer, or performance of service;

H.      For violations of N.Y. Gen. Bus. Law § 349, Plaintiffs' actual damages and reasonable attorney's fees.

I.      For pre- and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law; and

J.      For such additional relief as the Court deems just and appropriate.

Dated:  New York, New York
        December 22, 2021

                                KAUFMAN & KAHN, LLP

                                By: /s/ Mark S. Kaufman_____
                                Mark S. Kaufman
                                10 Grand Central
                                155 East 44th Street, 19th Floor
                                New York, New York  10017
                                Tel.:  (212) 293-5556
                                Email:  Kaufman@kaufmankahn.com
                                *Attorneys for Plaintiffs*

EXHIBIT A:
**PLAINTIFFS' ORIGINAL AND EXCLUSIVE WORKS**

**United King Film Distribution Ltd.**, available on http://www.unitedking.co.il/Movies/All_English

**DBS Satellite Services (1998) Ltd. [YES]**, available on http://www.yes.co.il/

**HOT – Communication Systems Ltd.  [HOT]**, available on http://www.hot.net.il/heb/Main/

**Charlton Ltd. [Sport 1, 2,3, 4]**,  some of its content available on: https://sport1.maariv.co.il/vod/

**Reshet Media Ltd. [Channel 13]**, available on https://13tv.co.il/vod/

**Keshet Broadcasting Ltd [Channel 12]**, available on  http://www.mako.co.il/mako-vod?Partner=footerLinks

**The Plaintiffs and Their Copyrights**

1. **United King Film Distribution (199) Ltd ("United King")** is the leading producer of films in Israel.  United King owns the copyright in hundreds of original productions including but not limited to the following: *Spider in the Net; The Institution; Alex Is Sick Of Love; Arbinka; Matriculation Examination; The Orchestra Visit; Halfon Hill Does Not Answer; Beaufort; The Arrangement; The Inner Grammar; The End Of the World To the Left; Shlomi's Stars; The Band; Tito Unemployed; The Return From India; This Is Sodom; Lebanon; Walk On the Water; Behind Bars; Metallic Blues; Peeps; Noodle; Snooker Celebration;* and *Charlie And A Half.*

   In addition, United King is the sole distributor in Israel of a large number of cinematic productions as well as foreign film productions, for which it has also been granted the exclusive rights to transmit and distribute in Israel, and to translate the works into Hebrew and some also into Russian and Arabic, solely for distribution and broadcast in Israel, including the following: *Brahms: The Boy 2;  Ophelia; Zoe1; Official Secrets; Can You Keep A Secret; The Professor and the Madman; Asterix: The Secret of the Magic Potion; Rambo V: Last Blood; The Butler; Angel Has Fallen;  Troll: the Tale of a Tail; Scary Stories to Tell in the Dark; The Hummingbird Project; Escape Plan 3; Mumbai Hotel; Domino; Extremely Wicked, Shockingly Evil and Vile;  Hellboy: Rise Of the Blood Queen; Dragged Across Concrete; Joint Custody; Close; Replicas; The Gentlemen (*a/k/a *Tough Guys); A Hidden Life (*a/k/a *Radegund the Turning; Serial Bad Weddings 2; Drunk Parents; Driven  Midway; A Dog's Journey; A Private War; Long Shot; Serenity; Inconceivable; Backtrace; Submergence; 1917; Red Shoes and the Seven Dwarves; Teen Spirit; Mia and the White Lion; First Kill; Skin; Amazing Grace; Red Joan; After; Fahrenheit 451; 9/11; A Hidden Life (*a/k/a *Radegund); Summit – Twilight Saga; Point Break; Now You See Me; Red; Red 2; Sierra; Whiplash; The Call; Mister Smith; Walk Among the Tombstones; Danny Collins, The Water Diviner; Annapurna; American Hustle; Kill Your Darlings; Red Grabite;* and *The Wolf of Wall Street*

2. *DBS Satellite Services (1998) Ltd. ("YES") is the only satellite television service in* Israel and is the owner of local broadcasting channels, on which it distributes or shares in the distribution of series, movies, documentaries, including the following YES MOVIES DRAMA; YES MOVIES ACTION; YES MOVIES COMEDY; YES ISRAELI; YES TV DRAMA; YES TV ACTION; YES TV COMEDY; YES DOCO (for documentaries). YES is also the owner of the copyright in hundreds of local productions which produces or is a production partner in series, films, documentaries, and other works. These productions include the following *Fauda; The Dubbed; The Bosgloss; Just for Today; Angel's Mother; My Successful Sisters; Your Honor; TAG; Good Cop; Knitted; Blue*

*Natalie; The Office; Lost in Africa; Judah Goes to War; On the Way Home; Israeli Wedding; Lives in LALA Land; Pink Time; Ukraine Brides; Worst Society in the World; Google Baby; For the Flamenco; Mama Says; On the Way Up;* and *The Prisoner.*

YES also owns the exclusive rights to distribute and transmit in Israel the following international content for which it has also been granted the exclusive rights to transmit and distribute in Israel, and to translate the works into Hebrew: *Jane the Virgin;  Bloodline; Marvel's Agent Carter; Outlander Part 2;  Game Of Thrones 5; Vikings 3;  The Missing; Silicon Valley 2; Veep 4;  Cucumber; Banana;  Sirens 2; Hot in Cleveland 6;  Happy Valley;  Louie 5; Mistresses;  Salem 2;  Castle; Mount Pleasant;  Black List;  Person of Interest;  The Big Bang Theory8;  Grey's Anatomy;  Rocky Blue;  Modern Family;  Black-ish;  Fresh boat of the Sea;*   and *Two and a Half Men.*

3. **Hot Communications Systems Ltd ("HOT")** is the only cable broadcasting provider in Israel and has original broadcasting channels, (including: HOT3; HOT HBO; HOT ZONE; HOT COMEDY CENTRAL; HOT ISRAELI ENTERTAINMENT; CHANNEL 8; HOT REAL; HOT VOD CINEMA; HOT CINEMA 1; HOT CINEMA 2; HOT CINEMA 3; HOT CINEMA 4).  HOT produces or invests, and owns the copyright in, original Israeli productions, including the following:  *Shababniks; Forabar;  Appendix;  Kingship; Kibbutzniks;  Dumb  Virgins; Zagori Empire; Connected +; We are the map; Very Important Man;  Aspor;  Connected;  The Switch;  Prime Minister's Children;  Wedding Season;  Hasamba Generation 3;  REDBAND;  Scavengers;  What the Bachelor Needs; Land;  Smoke Transfers;  Exposed;  Rinat Vivio;*  and *Split.*

HOT also owns the exclusive rights to transmit and distribute in Israel, and to translate into Hebrew the following international content for which it has also been granted the exclusive rights to transmit, distribute and translate the works into Hebrew: *Mad Men Season 7; American Crime; The Killer Guide; Scandal Season 4; Revenge Season 4; Kingdom; Sister Jackie 7; House of Lies 4; Young Wolf; Vampire Diaries; Little Liars; Shameless; Broadchurch; The Staff; Choose Me; Sensitive Skin; Musketeers; Respectful Woman On the Field;* and *Getting Married.*

4. **Charlton Ltd** broadcasts sports events from Israel and the world on four channels: Sport 1, Sport 2, Sport 3 and Sport 4. Charlton's sports channels broadcast the following live football (soccer) events: the Premier League, the English League, the Second English League, the German League, the Russian League, the Belgian League, the Dutch League, the Greek League, the Portuguese Football League, the Argentine League, the Brazilian League, the European League, the Second Spanish Football League, the English Cup, the English League Cup, the Italian Cup, the Spanish Cup, the German Cup and the French Cup. In the field of basketball, Charlton broadcasts games from the Spanish League, the Greek League, the Russian League, The Eurocup and The Spanish Cup. The channel also broadcasts the German Handball League, the Champions League in Handball, WWE, Dog Fights, Diamond League, national team games, preparatory tournaments, friendly matches and other sports such as athletics, beach soccer, beach volleyball, handball, volleyball, judo, boxing and tennis.

5. **Reshet Media Ltd.** ("Reshet") is the owner of Channel 13 and News 13. Reshet is a partner and copyright owner of hundreds of original productions, including the following: *Hisardot; Hach Agadol; Shnot Ha-80; Hermon; Hakol Holech; Chaverot; X Factor Israel; Hmerotz Iamillion; Mitschakey Hashef; The Voice Israel; The Wall; Echad Neged Meha; Echad Haam Hechad;  Orna bli Datz;  Aviva Haovati;  Atzel Segev Bamitbach;  Betipul; Beshidor  Choker;  Gomrot Veolchot;  Hesder;  Hachim  Tze  Lo  Hakol;  Hachamishya Hakamerit; Hakol Dvash; Cheder Milchamma;  Calabotech;  Klavim Lo Novchim Beyarok;*

*Kapiuot; Lalchet Al Hamayeim; Mahdorat Hashevet; Masaot James Beheretz Hakodesh; Mishpacha Choreget; Mishpach Choreget; Mitzchak Machor; Rokdim Im Kochavim;* and *Tzchok Meavoda.*

6. **Keshet Broadcasting Ltd**. (**Keshet**) is a copyright owner of hundreds of original productions including *Homeland; Eretz Nehederet; Big Brother; A Star Is Born; Kidnapped; Arranged; Traffic Lights; Polishuk; House Arrest; See You; Jerusalem Mixed Grill; Arab Labor; Sabri Maranan; Fact;* and *Super Nanny.*

EXHIBIT B

**PLAINITIFFS' U.S.-REGISTERED COPYRIGHTS**

| | | | |
|---|---|---|---|
| D.B.S. Satellite Services (1998) Ltd. (also known as YES) | The Good Cop - television series | V9957 D190 P1 | 2018 |
| | | | |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : 101, CHAPTER 1: OUT OF THE DEPTH, I CRY TO YOU. | PA0002249971 | 2019 |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : CHAPTER 10 : 110, A SHAFT INTO A DARK TUNNEL. | PA0002250633 | 2019 |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : CHAPTER 2 : 102, I LOVE TOTO. | PA0002250624 | 2019 |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : CHAPTER 3 : 103, TWO PACKS OF RED NEXT. | PA0002250625 | 2019 |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : CHAPTER 4 : 104, THE DAWN MARTYR. | PA0002250626 | 2019 |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : CHAPTER 5 : 105, SHABBAT SHALOM. | PA0002250628 | 2019 |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : CHAPTER 6 : 106, ACCEPTANCE OF SILENCE. | PA0002250629 | 2019 |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : CHAPTER 7 : 107, JUDGING BY ITS END. | PA0002250630 | 2019 |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : CHAPTER 8 : 108, DEFENDANTS 2 AND 3. | PA0002250631 | 2019 |
| KESHET BROADCASTING INTERNATIONAL LTD. | OUR BOYS : CHAPTER 9 : 109, THE PERFUMER AND TANNER. | PA0002250632 | 2019 |
| Keshet Broadcasting International, Ltd. | Stockholm; audio-visual program / From book by Ester Namidar et al. | V9973D704 | 2019 |
| Keshet Broadcasting International, Ltd. | Stray Weeds. | V9956D753 | 2018 |
| Keshet Broadcasting International, Ltd. | Stray Weeds; television series. | V9956D752 | 2018 |
| Keshet Broadcasting International, Ltd. | Summer of 2014 & 1 other title. | V9963D146 | 2018 |
| Keshet Broadcasting International, Ltd. | Wisdom of the crowd / Keshet Broadcasting International, Ltd. | V9932D592 | 2017 |
| Keshet Broadcasting Ltd. | Deal With It : 101, RC Chaos in the Hotel. | PA0001874078 | 2013 |
| Keshet Broadcasting Ltd. | Deal With It : 102, The Cult. | PA0001883868 | 2013 |
| Keshet Broadcasting Ltd. | Deal With It : 103, Shirts Off. | PA0001874081 | 2013 |
| Keshet Broadcasting Ltd. | Deal With It : 104, Blind Rose. | PA0001883877 | 2013 |
| Keshet Broadcasting Ltd. | Deal With It : 105, Hypnotist. | PA0001883878 | 2013 |
| Keshet Broadcasting Ltd. | Deal With It : 106, Nut Job. | PA0001883880 | 2013 |
| Keshet Broadcasting Ltd. | "DEAL WITH IT : 202, HEIDI KLUM AND ROMAN ATWOOD & DENNIS ROADY. | PA0001929750 | 2014 |
| Keshet Broadcasting Ltd. | DEAL WITH IT : 203, TOM GREEN AND ILIZA SHLESINGER. | PA0001929808 | 2014 |
| Keshet Broadcasting Ltd. | "DEAL WITH IT : 204, ARSENIO HALL AND ALEX MANDEL. | PA0001929763 | 2014 |

| | Keshet Broadcasting Ltd. | "DEAL WITH IT : 205, KELLY OSBOURNE AND MOSHE KASHER. | PA0001929764 | 2014 |
|---|---|---|---|---|
| | Keshet Broadcasting Ltd. | "DEAL WITH IT : 206, KENDALL & KYLIE JENNER AND GARY OWEN. | PA0001929755 | 2014 |
| | Keshet Broadcasting Ltd. | "DEAL WITH IT : 207, TOM GREEN AND WWE SUPERSTAR THE MIZ. | PA0001929757 | 2014 |
| | Keshet Broadcasting Ltd. | "DEAL WITH IT : 208, BOB SAGET AND CHUEY MARTINEZ. | PA0001929803 | 2014 |
| | Keshet Broadcasting Ltd. | "DEAL WITH IT : 209, CHRIS JERICHO AND BILL ENGVALL. | PA0001929807 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 210, HOWIE MANDEL AND KEVIN NEALON. | PA0001929178 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 211, DAVID KOECHNER AND ALEX MANDEL. | PA0001929179 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 212, BILL & GIULIANA RANCIC AND ALEX MANDEL. | PA0001929177 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 213. | PA0001940326 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 214. | PA0001940325 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 215, JERRY O'CONNELL & JEANNIE MAI. | PA0001940307 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 216, KYM WHITLEY & JOSH WOLF. | PA0001940318 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 217, ANDREW BACHELOR 'KING BACH' & ALEX MANDEL. | PA0001940314 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 218, HOWIE MANDEL & JACK OSBOURNE. | PA0001940316 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 219, PENN JILLETTE & JESSIMAE PELUSO. | PA0001951737 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 220, CHUEY MARTINEZ & JOSH MEYERS. | PA0001951730 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 221, MELISSA PETERMAN & SARAH COLONNA. | PA0001951741 | 2014 |
| | Keshet Broadcasting Ltd. | DEAL WITH IT : 222, MARLON WAYANS & MO MANDEL. | PA0001951738 | 2014 |
| | Keshet Broadcasting Ltd. | Echo 3. | V15002D776 | 2021 |
| | Keshet Broadcasting, Ltd | Homeland : a.k.a. Prisoners of war. | V3599D708 | 2011 |
| | Keshet Broadcasting, Ltd. | Prisoners of war / by Gideon Raff, work for hire. | V3588D180 | 2010 |
| | Keshet Broadcasting Ltd. | RISING STAR. | VA0001899930 | 2013 |
| | Keshet Broadcasting, Ltd. | Savri Maranan & 1 other title; series / By Rubi Duanias et al. | V9912D616 | 2014 |
| | Keshet Broadcasting, Ltd. | Traffic light. | V3599D423 | 2011 |

| | United King Films | Walk on water / an Eytan Fox film ; director, Eytan Fox. | PA0001316237 | 2004 |
|---|---|---|---|---|
| | United King Films Distribution 1990, Ltd. | Maktub; motion picture. | V9959D003 | 2018 |
| | United King Films Distribution 1990, Ltd | Maktub; motion picture/ screenplay / Hanan Savyon & Guy Amir. | V9958D449 | 2018 |